UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| LORIE LUNDBLADE,<br><br>    Petitioner,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Respondent. | Case No.: 4:18-cv-00030-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Lorie Lundblade's Petition for Review (Dkt. 1),[1] appealing the Social Security Administration's final decision finding her not disabled and denying her claim for disability insurance benefits. *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. <u>ADMINISTRATIVE PROCEEDINGS</u>

On March 21, 2014, Petitioner protectively applied for Title II disability and disability insurance benefits. (AR 25.) Petitioner alleged disability beginning August 1, 2007. (*Id.*) Her claims were denied initially on June 20, 2014 and then again on reconsideration on November 3, 2014. (*Id.*) On December 23, 2014, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Petitioner appeared and testified at a hearing held on

---

[1] The pleading initiating this case bears the title "Complaint," but it was submitted in CM/ECF as a "Petition for Review." Consistent with the usual practice in this District, it will be referred to as a "Petition for Review" throughout this decision. Similarly, the parties will be referred to as "Petitioner" and "Respondent" rather than "Plaintiff" and "Defendant."

**MEMORANDUM DECISION AND ORDER – 1**

September 15, 2016 before ALJ Tanya Dvarishkis. (*Id.*)  Impartial vocational expert Kent Granat also appeared and testified at the hearing. (*Id.*)

On October 26, 2016, the ALJ issued a Decision denying Petitioner's claim, finding that she was not disabled within the meaning of the Social Security Act. (AR 36.)  Petitioner timely requested review from the Appeals Council on or about November 14, 2016. (AR 169.)  On November 21, 2017, the Appeals Council denied Petitioner's Request for Review, making the ALJ decision the final decision of the Commissioner of Social Security. (AR 1.)

Petitioner's administrative remedies having been exhausted, she timely filed the instant action, arguing that "[t]he conclusions and findings of fact of the [Respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review 2 (Dkt. 1). Petitioner contends the ALJ erred by (1) assessing an RFC that is unsupported by substantial evidence with respect to her ability to reach, handle, and finder with her upper extremities; and (2) failing to elicit a reasonable explanation for the inconsistencies between the Dictionary of Occupational Titles and the jobs provided by the vocational expert when finding that Petitioner could engage in other work. *See generally* Pet'r's Mem. (Dkt. 20).  Petitioner asks that the ALJ's decision be vacated and this matter be remanded for further administrative proceedings. *Id.* at 17.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the

**MEMORANDUM DECISION AND ORDER – 2**

ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III. DISCUSSION

A.  **Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2007 through her date last insured of June 30, 2013. (AR 27.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe"

**MEMORANDUM DECISION AND ORDER – 4**

when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that cause no more than minimal limitation on an individual's ability to work. SSR 96-3p, 1996 WL 374181 (July 2, 1996); *see also* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that, through the date last insured, Petitioner had the following severe impairments:

> left shoulder impingement with partial thickness cuff tear, status post arthroscopy with other procedures; left shoulder degenerative arthritis, status post left total shoulder arthroplasty; left greater trochanteric bursitis, status post bursectomy; left hip osteoarthritis, status post left total hip arthroplasty; right knee medial meniscal tear, anterior cruciate ligament tear, and osteoarthritis, status post right total knee replacement; left knee tricompartmental osteoarthritis, status post left total knee arthroplasty; right ankle focal cartilaginous defects, status post arthroscopy with drilling and cartilage transplant; and rheumatoid arthritis.

(AR 27.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, her claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 28.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her

**MEMORANDUM DECISION AND ORDER – 5**

ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she performed within the last 15 years or 15 years prior to the date that disability must be established, as long as the work was substantial gainful activity and lasted long enough for her to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant could lift, carry, push, and pull up to 10 pounds occasionally and less than 10 pounds frequently; could stand and walk for not more than two hours total in an eight-hour day; and could sit for up to six hours total in an eight-hour day. The claimant could occasionally operate foot controls with the bilateral lower extremities and frequently operate hand controls with the bilateral upper extremities. The claimant could never overhead reach with the left upper extremity and could frequently handle, finger, and feel with the bilateral upper extremities. The claimant could never climb ladders, ropes, or scaffolds and could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. The claimant could have no exposure to unprotected heights, moving mechanical parts, or other workplace hazards. The claimant could not more than occasionally operate a motor vehicle as part of the job duties. The claimant could have no exposure to extreme cold, vibration, or work on rough or uneven surfaces.

(AR 28–29.) The ALJ further found that Petitioner was capable of performing her past relevant work as an insurance clerk, because such work did not require the performance of work-related activities precluded by her RFC. (AR 34.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant is able to do such other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, although the

ALJ had already found that Petitioner was capable of performing past relevant work, she also considered whether there were other jobs in the national economy Petitioner was able to perform. The ALJ found that Petitioner's RFC is compatible with work as a "receptionist," "data examination clerk," or "clerical sorter." (AR 35.) The ALJ further found that these jobs exist in significant numbers in the national economy. (*Id.*)

Based on the finding that Petitioner could perform past relevant work or other jobs that exist in significant numbers in the national economy, the ALJ ultimately concluded that Petitioner "was not under a disability, as defined in the Social Security Act, at any time from August 1, 2007, the alleged onset date, through June 30, 2013, the date last insured." (AR 36.)

**B.     Analysis**

Petitioner raises two issues with the ALJ's decision. First, she argues the ALJ erred by assessing an RFC that is unsupported by substantial evidence with respect to her ability to reach, handle, and finger with her upper extremities because the record lacks any medical assessment that opines to limitations in these functions. Pet'r's Mem. 1, 10–13 (Dkt. 20). Second, she argues the ALJ erred by failing to elicit a reasonable explanation for the inconsistencies between the Dictionary of Occupational Titles and the jobs provided by the vocational expert when finding that Petitioner could engage in other work. Pet'r's Mem. 2, 13–16 (Dkt. 20). These issues will be addressed in order.

   **1.  The ALJ Did Not Err in Assessing Petitioner's RFC.**

The ALJ found that Petitioner "could never overhead reach with the left upper extremity and could frequently handle, finger, and feel with the bilateral upper extremities." (AR 29.) Petitioner contends this portion of the assessed RFC is unsupported by substantial evidence because "there are no medical opinions on record that support these limitations." Pet'r's Mem.

10 (Dkt. 20). She notes that two non-examining state agency physicians, Dr. Cusack and Dr. Song, each determined Petitioner had no limitations in reaching, handling, fingering, or fine/gross manipulation. *Id.* (citing AR 73–76, 83–88). Indeed, the state agency forms completed by each physician indicate "No" to the query "Does the individual have manipulative limitations?" (AR 74 (Dr. Cusack), AR 85 (Dr. Song).)

Petitioner argues that the RFC must generally be supported by a medical opinion from an acceptable medical source, *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993), and that an ALJ should not make his or her own exploration and assessment as to a claimant's impairments, *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975). Pet'r's Mem. 10–11 (Dkt. 20). She concludes that the lack of any treating or examining opinion on the record regarding her alleged reaching and manipulative limitations denotes a lack of substantial evidence supporting the RFC. *Id.* at 11.

The Court is not persuaded by Petitioner's argument on this point. As an initial matter, the Court notes that the assessed RFC is more restrictive than the cited opinions suggest it should be, which implies the ALJ considered evidence beyond the opinions themselves (as he was required to do). Indeed, the record does contain other evidence that Petitioner experienced manipulative limitations prior to her date last insured: At the hearing, Petitioner testified that on days her arthritis was bad, she could not use her fingers at all, to the point that she could not type and required assistance getting dressed. (AR 62.) Moreover, and as Petitioner cites, there are extensive medical records regarding assessment and treatment of her left shoulder pain. (AR 262–266, 280–283.)

Petitioner faults the ALJ for not considering or referring to medical opinions of treating providers when assessing her limitations related to upper extremity reaching and manipulation.

**MEMORANDUM DECISION AND ORDER – 8**

But it is not clear that any treating providers' medical opinions appear in the record or were even created. It is Petitioner's burden in the first instance to prove that she is disabled. *Stone v. Heckler*, 722 F.2d 464, 468 (9th Cir. 1983). The ALJ has a duty to fully develop the record, *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983), but this duty is framed by Social Security regulations. Per 20 C.F.R. § 404.1520b(a), if all the evidence, including all medical opinions, is consistent and there is sufficient evidence to determine whether a claimant is disabled, a decision will be based on that evidence. If evidence in the case record (including any medical opinions and prior administrative medical findings) is inconsistent, Respondent will consider the relevant evidence to assess whether making a disability determination is possible to determine whether the claimant is disabled based on the evidence in the record. 20 C.F.R. § 404.1520b(b)(1). When Respondent cannot resolve inconsistencies in the evidence, a decision will be made based on the evidence in the record. 20 C.F.R. § 404.1520b(b)(3). Moreover, "[f]indings made by a State agency disability examiner … at a previous level of adjudication about a medical issue" are "inherently neither valuable nor persuasive" when assessing whether a claimant is disabled, and Respondent is not to "provide any analysis about how … such evidence" was considered. 20 C.F.R. § 404.1520b(c)(2). It is the ALJ's duty ultimately to resolve inconsistencies in the evidence. *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

There is no indication here that the ALJ needed to more fully develop the record or even that the evidence of record was inconsistent. The ALJ's assessment of Petitioner's RFC regarding reaching and manipulative limitations is consistent with the record. Although the record lacks any medical opinion by a treating provider that expressly addresses the extent of Petitioner's limitations in these areas, there was nonetheless enough record evidence for the ALJ to make the challenged findings. As to Petitioner's reaching limitations, the ALJ found that

**MEMORANDUM DECISION AND ORDER – 9**

Petitioner's severe impairments included "left shoulder impingement with partial thickness cuff tear, status post arthroscopy with other procedures; left shoulder degenerative arthritis, status post left total shoulder arthroplasty; … and rheumatoid arthritis." (AR 27.) Petitioner does not challenge these findings about her severe impairments. Additionally, the record includes Petitioner's own hearing testimony that reaching overhead is very difficult on her left side. (AR 61.) There was substantial evidence to assess an RFC precluding Petitioner from reaching overhead on her left side and there was no duty to elicit a medical opinion from a treating or examining provider on this issue.

As to manipulative limitations, Petitioner testified that on days when her arthritis was bad, she could not use her fingers at all. (AR 62.) But she had trouble specifying how frequently she was limited by her impairments prior to her date last insured, which was more than three years prior to the hearing. (AR 50–51, 53, 54, 56–58.) She also testified that she had trouble remembering things after having brain surgery. (AR 51.) Her medical history includes several years of treatment from a rheumatologist, with the records of those treatments generally indicating she was responding well to medication for rheumatoid arthritis and not indicating any difficulties with manipulation despite occasional mild synovitis at times in the joints in her upper extremities. (AR 326–349.) A finding that she could "frequently" manipulate is consistent with the evidence that she had difficulties manipulating on bad arthritis days, that extensive notes from her rheumatologist failed to indicate manipulative limitations, and that two non-examining state agency physicians each opined that she had no manipulative limitations.

In sum then, on this issue, there was substantial evidence to support the ALJ's RFC assessment as to reaching and manipulation and there was no duty to elicit a medical opinion

from a treating or examining provider. Thus, Petitioner has failed to show that the ALJ's RFC assessment was not based on substantial evidence.

Petitioner also contends the ALJ improperly substituted her own lay opinion as that of a medical source or otherwise improperly imposed her own lay interpretation of the medical evidence. Pet'r's Br. 10–12 (Dkt. 20). This argument is unavailing. The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. Such a responsibility does not result in the ALJ committing legal error when she assesses an RFC that is consistent with the record. Here, before she assessed an RFC saying Petitioner "could never overhead reach with the left upper extremity," the ALJ met her duties by examining the evidence of Petitioner's extensive left shoulder treatment and testimony that the Petitioner could not reach overhead. (AR 29.) The ALJ did not deviate from her duty in examining the evidence of Petitioner's rheumatoid arthritis and testimony that on bad arthritis days she could not manipulate when assessing an RFC saying she "could frequently handle, finger, and feel with the bilateral upper extremities." (AR 29.) These instances were not the result of an ALJ improperly imposing lay opinion regarding medical evidence. These were the result of an ALJ properly interpreting evidence of record, as she is charged to do. Moreover, they were not expressions of an improper medical opinion. Rather, they were expressions of findings and conclusions mandated by the disability determination process. Petitioner has not shown the ALJ erred in assessing her RFC.

2. **The ALJ Did Not Err in Finding Petitioner Could Engage in Other Work.**

Petitioner contends the ALJ failed to reconcile differences between the testimony of the vocational expert ("VE") who testified at the hearing and the content of the Dictionary of Occupational Titles ("DOT"). She contends that such a failure means the ALJ's finding

**MEMORANDUM DECISION AND ORDER – 11**

Petitioner could engage in other work is not supported by substantial evidence. Pet'r's Mem. 13–16 (Dkt. 20). Specifically, Petitioner argues that the three jobs cited by the VE are inconsistent with the ALJ's limitation regarding overhead reaching. Even though the VE described that his testimony was consistent with the DOT (AR 66), Petitioner argues that it was inconsistent and the ALJ erred by not reconciling the inconsistency.

Petitioner relies on SSR 00-4P, an interpretive ruling regarding the use of vocational experts in disability determinations. It provides in relevant part that:

> Occupational evidence provided by a VE … generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE … evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE … evidence to support a determination or decision about whether the claimant is disabled.

SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), at *2. An ALJ may rely on VE testimony over the DOT if a reasonable explanation is given for a conflict between them. *Id.* One such reasonable explanation may be that "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE … may be able to provide more specific information about jobs or occupations than the DOT." *Id.* at *3.

Petitioner argues that the VE's testimony that Petitioner could perform the jobs of "receptionist," "data exam clerk," or "clerical sorter" were all inconsistent with an RFC precluding overhead reaching on the left side, because the DOT indicates that each of these occupations requires frequent reaching. She contends the ALJ erred by failing to resolve this conflict.

Petitioner's argument challenges the ALJ's Step Five finding that she could engage in other jobs that exist in substantial numbers in the national economy. Pet'r's Mem. 13 (Dkt. 20)

("The ALJ's Step 5 determination is unsupported by substantial evidence…"). But although the ALJ did make a Step Five determination, such determination was in the alternative after she had already found, at Step Four, that Petitioner could engage in past relevant work as an insurance clerk. (AR 34.) Such a Step Four finding made further findings unnecessary and mandated a finding that Petitioner was not disabled. Petitioner did not challenge the ALJ's Step Four finding that she could engage in past relevant work as an insurance clerk. For this reason, Respondent argues that Petitioner waived such an argument and therefore it is immaterial whether the ALJ erred at Step Five. Resp't's Mem. 7 n.3 (Dkt. 24.) The Court notes that the DOT listing for insurance clerk also requires frequent reaching, so the issue Petitioner raises is applicable equally at both Step Four and Step Five in this case. Regardless, the Court need not, and does not, address whether Petitioner waived the issue as to Step Four because the Court is not persuaded by Petitioner's argument regarding an alleged inconsistency in Step Five. Hence, the result is the same either way.

Petitioner cites decisions from other jurisdictions not binding on this Court, which hold that overhead reaching is included within reaching. Pet'r's Mem. 14 (Dkt. 20). But Respondent points out that the DOT definition of "reaching" – "extending hands and arms in any direction" – is quite broad and does not distinguish whether one or both hands are needed to perform the work, whether the reaching can be performed with only one hand or arm, or whether the work involves reaching overhead, to the side, front, or behind. Resp't's Mem. 8 (Dkt. 24) (quoting SSR 85-15, 1985 WL 56857, at *7). Respondent also cites binding precedent holding that "not every job that involves reaching requires the ability to reach overhead." *Id.* (quoting *Gutierrez v. Colvin*, 844 F.3d 804, 808 (9th Cir. 2016)). In *Gutierrez,* the Ninth Circuit concluded that some jobs that require frequent reaching may nonetheless not require *overhead* reaching: "According

**MEMORANDUM DECISION AND ORDER – 13**

to the [DOT], 'frequent reaching' is required of both cashiers and stock clerks. But anyone who's made a trip to the corner grocery store knows that while a clerk stocking shelves has to reach overhead frequently, the typical cashier never has to." *Gutierrez*, 844 F.3d at 808.

The *Gutierrez* court went on to describe the circumstances when an ALJ must inquire further of a VE:

> To be sure, an ALJ must ask follow up questions of a vocational expert when the expert's testimony is either obviously or apparently contrary to the [DOT], but the obligation doesn't extend to unlikely situations or circumstances. Had the expert opined that Ms. Gutierrez could stock shelves or wash windows, the conflict would have been apparent and obvious, and the ALJ would have needed to follow up with more specific questions. But where the frequency or necessity of a task is unlikely and unforeseeable—as it is with cashiers having to reach overhead—there's no similar obligation.
>
> Given how uncommon it is for most cashiers to have to reach overhead, we conclude that there was no apparent or obvious conflict between the expert's testimony and the [DOT]. The requirement for an ALJ to ask follow up questions is fact-dependent. While we acknowledge that there may be exceptional circumstances where cashiers have to reach overhead, this case doesn't present any. Responding to the ALJ's hypothetical question that specifically accounted for Ms. Gutierrez's limitations, the expert eliminated all jobs that would have required weight bearing and overhead reaching with her right arm, identifying a single job she could perform despite her limitations. The ALJ was entitled to rely on the expert's "experience in job placement" to account for "a particular job's requirements," SSR 00-4P, 2000 WL 1898704, at *2, and correctly did so here.

*Id.* at 808–809. Moreover, a footnote omitted from the above passage states that "[a]n example of cashiering that could involve overhead reaching is where a store sells restricted merchandise, such as cigarettes, which are kept overhead. But even in this atypical example, Ms. Gutierrez's reaching restriction would not have prevented her from reaching overhead with her left arm." *Id.* at 809 n.2.

Respondent contends that this case presents circumstances closely analogous to those in Gutierrez: there is an overhead reaching limitation on one side only, the hypothetical the VE considered matches the RFC ultimately assessed to Petitioner, the jobs the VE identified do not

obviously or apparently require frequent *overhead* reaching, and the ALJ was entitled to rely on the VE's testimony that his opinion was consistent with the DOT – even though the potential conflict or ambiguity was not identified or resolved at the time. Respondent cites the DOT descriptions for each of the three jobs the VE identified. The relevant portions of the descriptions are repeated here:

- A receptionist "[r]eceives callers at establishment, determines the nature of business, and directs callers to destination: Obtains caller's name and arranges for appointment with person called upon. Directs caller to destination and records name, time of call, nature of business, and person called upon. May operate PBX telephone console to receive incoming messages. May type memos, correspondence, reports, and other documents." DOT #237.367-038.

- A data examination clerk "[r]eviews computer input and output documents to ensure accuracy, completeness, and adherence to establishment standards: Reviews documents, such as surveys, to ensure completeness and appropriateness prior to data entry. Reads notes and instructions written on source documents and compares information with printouts to detect errors and ensure completeness and conformity with establishment policies and procedures. Notifies supervisor when errors and shortage of output are detected, and corrects errors or refers work to other workers for correction. Compares corrected input and output data with source documents, worksheets, and data displayed on screen of computer terminal to verify corrections. May review only computer input or output. May operate machines to separate and remove carbon paper from computer generated forms. May re-type mutilated forms, using typewriter. May sort printouts for distribution." DOT #209.387-022.

- A sorter "[s]orts data, such as forms, correspondence, checks, receipts, bills, and sales tickets, into specified sequence or grouping, such as by address, code, quantity, and class, for such purposes as filing, mailing, copying, or preparing records." DOT #209.687-022.

The Court agrees with Respondent. It is neither obvious nor apparent that a receptionist, data exam clerk, or clerical sorter would need to reach overhead frequently, or that on occasions when overhead reaching may be necessary the job could not be performed by using only one

**MEMORANDUM DECISION AND ORDER – 15**

hand to do so.² *Gutierrez* is on all fours with the instant case and its holding vitiates Petitioner's argument.

### IV. CONCLUSION

Petitioner has not shown that the ALJ erred, either by assessing an RFC that is unsupported by substantial evidence or by failing to reconcile alleged inconsistencies between the Dictionary of Occupational Titles and the vocational expert's testimony. Accordingly, the ALJ's decision is supported by substantial evidence and it will be upheld. Petitioner's Petition for Review will be denied.

### V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **DENIED,** the decision of the Commissioner is **AFFIRMED,** and this action is **DISMISSED** in its entirety, with prejudice.

DATED: March 27, 2019

Honorable Ronald E. Bush
Chief U.S. Magistrate Judge

---

² The same is true for an insurance clerk, DOT #219.387-014, who "[c]ompiles records of insurance policies covering risks to property and equipment of industrial organization: Files records of insurance transactions and keeps calendar of premiums due and expiration dates of policies. Prepares vouchers for payment of premiums and verifies that payments have been made. Fills in data on renewal policy applications and forwards applications to insurance company. Compiles statistical data for reports to insurance company and departments in organization. May notify insurance company of changes in property or equipment affecting insurance coverage. May type amortization schedules."